UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

UNITED STATES OF AMERICA,

      Plaintiff,

v.                                              Case No. 1:05:CR:21

CARLOS ALBERTO ESTRADA-JIMENEZ,        HON. GORDON J. QUIST

      Defendant.
_____/

**MEMORANDUM ORDER**

This Court has before it defendant's motion to suppress evidence of approximately two kilograms of cocaine obtained by law enforcement officers during a search of his Volkswagen. For the reasons set forth below, defendant's motion is denied.

**I.**     **Findings of Fact**

At about 2:58 p.m. on January 5, 2005, Michigan State Trooper, Alois B. Seal, noticed a Volkswagen automobile with a non-working rear brake light. He followed the Volkswagen off of I-94 on Exit 1. Trooper Seal called police dispatch to run a check on the license. The Volkswagen stopped in a Wendy's parking lot. Trooper Seal's police vehicle stopped right behind the Volkswagen so the Volkswagen could not move. Trooper Seal approached the Volkswagen and noticed two men in the Volkswagen. He spoke with the driver, defendant Carlos Alberto Estrada-Jimenez, who at that time spoke in English. Trooper Seal obtained defendant's driver's license, registration, and proof of insurance. He obtained and kept a state identification card from the

passenger in the Volkswagen, Carlos Ocampo.[1] Trooper Seal checked with the Law Enforcement Information Network (LEIN) to determine whether there was any warrant for defendant. There was not. Defendant told Trooper Seal that he was traveling to Grandville, Michigan, to pick up a truck. Trooper Seal noticed that defendant was unusually nervous and that there were three cell phones in the Volkswagen. Trooper Seal asked if he could look into the Volkswagen's trunk. From inside his Volkswagen, defendant opened the trunk for Trooper Seal. Trooper Seal noticed nothing unusual in the trunk, and he closed the trunk. He issued defendant a verbal warning about the defective brake light, but Trooper Seal did not issue a ticket. Trooper Seal returned the license, registration, and proof of insurance and identification card, and then defendant and Ocampo went into Wendy's to eat lunch.

While defendant and Ocampo were having lunch, Trooper Seal called Lt. Haskins of the New Buffalo, Michigan, police department because Trooper Seal was suspicious that defendant was engaged in illegal drug trafficking. Trooper Seal also checked with the El Paso, Texas Information Center (EPIC) to determine the crossings of defendant and Ocampo between Mexico and the United States. Trooper Seal was told that defendant had crossed the border from Mexico three times within the last three months. Lt. Haskins, who controlled a drug sniffing dog named Axel, arrived at the scene.

The two officers then approached the Wendy's restaurant and, either by hand motion from outside the restaurant or verbally inside the restaurant,[2] requested defendant and Ocampo to come

---

[1] In various documents and transcripts, Carlos Ocampo is also referred to as Carlos O'Campau and Carlos O'Campo.

[2] There is conflicting testimony on this fact. Ocampo testified that the officers gestured from outside the window to come outside. But Trooper Seal testified that he went into the restaurant and asked defendant and Ocampo to come outside. Either way, this Court concludes that defendant voluntarily left the restaurant and was not ordered to do so.

outside. Defendant and Ocampo voluntarily went outside. Defendant and Ocampo were not handcuffed or physically restrained at this time. When defendant and Ocampo came outside, Trooper Seal and Lt. Haskins interviewed defendant and Ocampo – specifically inquiring about alcohol and drugs. During this interview of defendant, defendant spoke in Spanish and did not seem to understand what Trooper Seal was saying. Trooper Seal broke up the interview with defendant, went to the driver's side of the Volkswagen, and tried to open the door to the Volkswagen, but he could not do so because it was locked. At this time, without being asked, defendant pulled his keys out of his pocket, and offered Trooper Seal the keys to the Volkswagen. The police never asked for the keys. Trooper Seal took the keys to the Volkswagen, opened the door, and performed a search. He located about two kilograms of cocaine in the Volkswagen. He then arrested and handcuffed defendant and Ocampo.

After the two kilograms of cocaine were found, Lt. Haskins had Axel sniff the exterior of the Volkswagen. Axel alerted to the driver's side door of the Volkswagen. When allowed inside the vehicle, Axel alerted on the cocaine in the backseat.

Defendant and Ocampo were arrested and taken to the Bridgman Michigan State Police Post where they were interviewed. Dale Hinz, a Michigan State Trooper, interviewed Ocampo in English. A Spanish speaking police officer, Detective Fabian Suarez, interviewed defendant in Spanish. After he was read his Miranda rights, defendant confessed to trafficking in cocaine. After his interview, Ocampo was released. Ocampo has not been charged with any crime.

## II.    Defendant Gave His Implied Consent to the Search

The question is whether defendant consented to the search of his vehicle. Trooper Seal testified that, after Ocampo's translation, defendant told the officers that they could look in the

3

Volkswagen. Ocampo disagreed with Trooper Seal and stated that defendant never verbally consented to the search. However, during the suppression hearing, Ocampo testified that Trooper Seal attempted to open the locked door of the Volkswagen. The Court accepts as true Ocampo's testimony that defendant voluntarily handed over the keys to Trooper Seal. Thus, even assuming for purposes of argument that there was no overt verbal consent in addition to the voluntary surrender of the keys, the issue here is whether, by handing over the keys, defendant gave Trooper Seal his implied consent to unlock and search the vehicle. For the following reasons, this Court concludes that defendant did indeed give valid, implied consent by physically handing the keys to Trooper Seal.

The Court of Appeals for the Sixth Circuit has held that verbal consent is not required for a search to be lawful. *See United States v. Carter*, 378 F.3d 584, 589 (6th Cir. 2004), *cert. denied*, 125 S. Ct. 1298 (2005). Rather, consent to a search may be in the form of words, gesture, or conduct. *See id.* at 587. Furthermore, an officer is not required to inform the defendant that he has the right to refuse the search, or to warn the defendant about the possible consequences of a search. *See United States v. Erwin*, 155 F.3d 818, 823 (6th Cir. 1998) (citing *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27, 93 S. Ct. 2041 (1973)); *United States v. Van Shutters*, 163 F.3d 331, 335 (6th Cir. 1998). Rather the test is whether, considering the totality of the circumstances, the consent was given "freely and voluntarily." *See Erwin* at 823*; Carter* at 587.

Here, there was no evidence that defendant was threatened, coerced or tricked into handing over the keys and allowing the police to search the Volkswagen. Even assuming that he was never explicitly asked for consent to the search, there was no testimony that he said "no" (the same word in Spanish as in English) when Trooper Seal unlocked the car and began the search. There was no

testimony that he attempted to stop the search at any time. As the Sixth Circuit has stated, "[h]is decision may have been rash and ill-considered, but that does not make it invalid." *Carter* at 588-89.

Other courts of appeal have held that a defendant gives implied consent to search a vehicle by handing an officer the key. In *United States v. Guiterrez*, 92 F.3d 468 (7th Cir. 1996), FBI agents investigating illegal narcotics activity arrived at an office and truck yard with guns drawn. They handcuffed seven individuals and ordered them to lean against a nearby wall. One of the detainees, Mr. Ceniceros, handed over his truck keys to the FBI agent. The agents searched the truck and discovered over 1,000 kilograms of cocaine. The defendant filed a motion to suppress, arguing that "the anxiety of the situation made 'voluntary' consent impossible." *Id.* at 471. The Court of Appeals for the Seventh Circuit denied the motion to suppress and stated that, "[a]bsent any basis for his claim of coercion, we hold that the implied consent Ceniceros gave by handing over the keys was indeed voluntary." *Id.* at 471; *see also United States v. Kurck*, 552 F.2d 1320, 1321 (8th Cir. 1977) (defendant implied his consent by handing over car keys to federal agents); *United States v. Mallory*, 460 F.2d 243, 247 (10th Cir. 1972) (same); *Robinson v. United States*, 325 F.2d 880 (5th Cir. 1964) (same); *United States v. Rosi*, 27 F.3d 409, 412 (9th Cir. 1994) (defendant impliedly consented to FBI agents' warrantless entry into his condominium by giving agents the key to open the condominium so defendant could change his clothes); *United States v. McGuire*, 957 F.2d 310, 314 (7th Cir. 1992) (defendant voluntarily consented to search of bag by handing it to the state trooper).

This Court is aware of the Sixth Circuit's decision in *United States v. Heath*, 259 F.3d 522 (6th Cir. 2001), but finds that case distinguishable from this one. In *Heath*, the police were investigating possible illegal narcotics activity and noticed that the defendant made repeated trips to an apartment building under investigation. After the defendant left the building, the police pulled

5

his car over and conducted a patdown search. During the search, the officer saw a set of keys in the defendant's pocket and asked if defendant would "mind if [he] got them since they're not your keys." The defendant responded "no" and the officer removed the keys from his pocket. The officers then drove back to the apartment building and used one of the keys to gain entry to the main building. They did not know which exact apartment defendant had been at, so the police tested all of the doors with the other key to see if it worked. Finally, on the third floor, the key fit, and the police gained entry to the apartment by telling the occupant that "just . . . a little bit of marijuana" wouldn't be "that big of a deal." *Id.* at 527. The occupant voluntarily let them in and the police found drug paraphernalia and approximately three kilograms of cocaine. The defendant filed a motion to suppress the evidence. The Sixth Circuit held that the evidence must be suppressed because the officers illegally entered the building without valid consent. "[T[he mere possession of a key will not transform an illegal entry into a valid one. It is the authority to enter, not the manner of entry, that provides the legality for the officers' conduct." *Id.* at 534.

     Here, Trooper Seal had the defendant's authority to enter the Volkswagen. Defendant saw Trooper Seal try to open the door and voluntarily handed over the key. The police did not have to reach into defendant's pocket. The search was near in time and place, as opposed to *Heath*, where the officers had to drive miles back to the apartment. Furthermore, the key readily opened the car door, as opposed to *Heath* where the officers had to try many doors before finding the right one. Unlike *Heath*, the police in the instant case did not have to make any false representations in order to gain entry. And, the instant case involved the search of an automobile and not a dwelling. Therefore, this Court concludes that defendant gave his implied consent to search the car and the search was lawful.

6

## III.     Defendant Was Not Unlawfully Detained

Defendant argues that, even if he gave his consent, the consent was invalid because the underlying detention was unlawful. *See United States v. Mesa*, 62 F.3d 159, 162-63 (6th Cir. 1995). There are two alleged detentions at issue here. The first detention was the initial traffic stop where Trooper Seal held on to defendant's license, registration and proof of insurance and Ocampo's identification card until after he had searched the trunk of the Volkswagen. This Court finds that this detention was not unlawful. It was not for a long period of time, it was incident to the traffic stop, and defendant voluntarily consented to the search. *See United States v. Guimond*, 116 F.3d 166, 171 (6th Cir. 1997). Furthermore, no illegal contraband was discovered during this initial search.

The second alleged detention occurred when Trooper Seal asked defendant and Ocampo to step out of the Wendy's restaurant. The Court concludes that this was not a seizure but rather was a consensual encounter. The evidence shows that defendant and Ocampo willingly left the restaurant and, as opposed to *Mesa*, there is no evidence that they were handcuffed or physically restrained at this time. There is no evidence that Trooper Seal took defendant's license or registration or Ocampo's identification card again. The test is whether, under the totality of the circumstances, a reasonable person would feel free to end a police encounter. *See United States v. Mendenhall*, 446 U.S. 544, 557, 100 S. Ct. 1870 (1980). The Supreme Court has held that the police are not required to tell the defendant that he or she has the right to leave or refuse the search. *See Ohio v. Robinette*, 519 U.S. 33, 39, 117 S. Ct. 417, 421 (1996). Defendant and Ocampo did nothing to try to end the search or the interview, and there is no evidence that the police unlawfully prevented them from leaving. Therefore, this Court concludes that there was no unlawful detention.

### IV.     The Inevitable Discovery Doctrine Applies Here

Finally, this Court notes that, even if there was an unlawful search or seizure, the evidence of the cocaine could be admitted under the "inevitable discovery" doctrine. *See Nix v. Williams*, 467 U.S. 431, 444, 104 S. Ct. 2501 (1984); *United States v. Keszthelyi*, 308 F.3d 557, 574 (6th Cir. 2002). Axel, the drug sniffing dog, and Lt. Haskins arrived at the scene while defendant and Ocampo were still inside Wendy's restaurant. Here there was sufficient evidence that Axel would have alerted to the cocaine in the car even if defendant had not consented to the search. Had he alerted, Trooper Seal would have had probable cause to conduct the search and would have found the cocaine. *See Illinois v. Caballes*, 125 S. Ct. 834, 837-38 (2005) (use of drug detection dog on a vehicle is not a search subject to the Fourth Amendment). Therefore,

**IT IS HEREBY ORDERED THAT** the testimony regarding the search of the Volkswagen and the evidence of approximately two kilograms of cocaine will be admitted and defendant's motion to suppress (docket no. 31) is DENIED.


Dated:  September 19, 2005                              /s/ Gordon J. Quist
                                                    GORDON J. QUIST
                                                    UNITED STATES DISTRICT JUDGE